Hillsborough,
May 3, 1949. } No. 3785.

ELLEN S. ABELL *v.* AMOSKEAG REALTY COMPANY.

*McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the plaintiff.

*Sheehan, Phinney & Bass* (*Mr. Phinney* orally), for the defendant.

JOHNSTON, J.  The defendant is not liable for the icy condition of the sidewalk if it was due to natural precipitation and traffic on the sidewalk and the entrance by pedestrians.  There is evidence that such was the fact.  The plaintiff testified: "A.  All I remember is, there was plenty of ice and snow right in front of our doorway at 1037.  Q. And there had been plenty of ice and snow right in front of your doorway at 1037 Elm Street about how long before January 15, 1945?  A. I don't remember how long.  Q. Well, was it a couple days or longer?  A. It was longer than that.  It had been there ever since the first storm.  They had never cleaned it.  Q. As nearly as you can recall, was the first storm a month before January 15th?  A. I don't remember.  Q. Well, was it a couple weeks before January 15th, or don't you know?  A. I don't remember.  Q. You know there were some storms prior to January 15th?  A. I know there were, yes. . . . Q. But there was snow and ice for some period of time in front of the entrance of 1037?  A. That is right.  Q. There is, and was at that time, fairly heavy pedestrian traffic up and down Elm Street on that east sidewalk.  Isn't that so?  A. Yes.  Q. And a good many people pass up and down that east sidewalk between Concord and Lowell Street daily, don't they?  A. At that time there were probably hundreds every day."  There is no burden upon the defendant to prove that the condition existing on the day of the accident was a common one natural in this latitude in January.

However, the plaintiff claims that the ice upon which she slipped was an artificial accumulation because of the negligent maintenance of the pigeon guard over the cornice.  *Worthen* v. *Abbott*, 90 N. H. 164, and cases cited.  In order to succeed in this claim, she must make it appear more probable than otherwise that the ice that caused her fall was due to the board above rather than to natural conditions plus the walking of many pedestrians, or at least that the board added appreciably to a dangerous condition already existing.

There is no evidence that the appearance of the ice under consideration indicated at all its source.  All that the plaintiff was able to say on this point was: "The right foot was on ice and snow as I lifted my left foot."  The case is unlike *Worthen* v. *Abbott, supra,* in which the ice was observed to be "frozen like ocean waves, with crevices in between and overlaps of ice," and "dirty, gray water stains" were seen on the building.

The plaintiff does seek to show causal relation between the pigeon'

guard and the ice upon which she fell. Her expert witness, an architect, testified that three years after the accident at the time of the trial in January, 1948 he saw dripping from the board and "evidence of moisture" on the sidewalk within three feet of the entrance. A witness for the defendant, who was a tenant in the property and occupied a room right over the entrance, admitted that if there was water on the board, it would run down toward the street. But he also testified that in his thirty-nine years of tenancy he had never seen any drippings from the cornice or from the pigeon guard. He had never seen any ice form on the sidewalk from any drippings. The expert called by the defendant did say that some of the melted snow on the board would undoubtedly ooze out over the edge of the cornice and probably fall down in the street, but he had previously testified that "with the shape that the board is in at the present time, it would seem very unlikely that water could run off that edge."

The fact that the cornice extended eighteen inches out from the line of the building and the step and so beyond the place where the plaintiff's foot slipped is met by the theory that water as it falls may be blown by the wind or that if enough of it falls it will spread.

It is unnecessary to decide whether there is any evidence of an artificial accumulation of ice because of negligent maintenance of the pigeon guard. The plaintiff's burden is to make it appear more probable than otherwise that the ice was caused by artificial accumulation rather than by natural conditions. If the possibility of the natural conditions is as strong as that of the artificial accumulation, then a verdict should have been directed for the defendant. *Jakel* v. *Brockelman*, 91 N. H. 453; *Ahern* v. *Company*, 88 N. H. 287. Between the two possibilities of the present case, the plaintiff has not shown by a preponderance of the evidence that the accident was due to a cause for which the defendant was responsible rather than to the one for which it was not. Her claim is conjecture only. The plaintiff has not met her burden of proof that it is more probable than otherwise that she was injured by an artificial accumulation of ice on the sidewalk.

The plaintiff excepted to the ruling of the Court withdrawing as an issue the alleged negligent maintenance of the step. No claim was made that the construction of the step was defective, but that, in view of the likelihood of icy conditions, either a ramp should have been used or the step placed farther in and away from the sidewalk line. A proper step is a common construction for passing from one level to another. The maintenance of a single correct step is not

evidence of negligence where an accident is due to the formation on a public sidewalk of ice from natural precipitation.

*Judgment for the defendant.*

BLANDIN, J., dissented: the others concurred.

BLANDIN, J., *dissenting:*

The main question upon which the court differs is whether reasonable men could find on the evidence here, as did the jury, that it is a little more probable than otherwise that the ice upon which the plaintiff slipped was formed by the drip from the pigeon board. I believe reasonable men could so find. Taking the evidence most favorable to the plaintiff, it appears that during the ten days prior to the accident on January 14th, 1945 seventeen inches of snow fell, including seven inches in a storm commencing on the 14th and ending at 2:00 A. M. on the very morning of the accident. A witness for the defendant admitted that "everytime you do get a storm . . . snow does collect on the board," that the board collects "a lot of snow"; also that after a storm "of six or seven inches there is sometimes as much as five or six inches of snow banked back against the building on the pigeon roost." The same witness also admitted that the snow melts and runs "down toward the street." From the defendant's expert came the concession that "snow would collect up there" on the board and that it "would be retained on the board more than it would on the cornice itself." This because of the "resistance" offered by the nails. This witness also testified that water from the melted snow on the board would "undoubtedly ooze out over the edge of the cornice," and "probably" fall down on the street.

A witness for the plaintiff testified that during the trial, which was in January, 1948, he saw "moisture" on the sidewalk "within the first three feet of the entrance approximately." He also saw frozen "drops of water" on the edge of the cornice and "drippings . . . directly upon the sidewalk." He testified that from over the entrance way "water just slides off this board and down." He told the jury that "there is an accumulation of snow here" (on the board). He saw a "substantial amount" of snow collected on the board and "evidence of water dripping on the edge" of the cornice. This testimony carries added weight in the plaintiff's favor in view of the fact that while it was admitted that the premises remained unchanged, the temperatures were lower during the trial than just prior to the time of the accident,

and hence the jury might reasonably find there was more melting and dripping just before January 15, 1945 than at the time of the trial.

There was evidence, and it is also common knowledge, that dripping from a building sometimes occurs when the temperature is below freezing due to the action of the sun and the heat from the building. It is significant that while each of the ten days immediately prior to and including the day of the accident showed temperatures below 32°, yet on the 4th, 8th, 9th, 12th and 13th the temperatures rose from below to above freezing, reaching 38° on the 4th and 36° and 37° on the 12th and 13th respectively. Mingled with the storms was clear weather, or at least occasions when the sun shone for substantial periods, for no less than seven days from the 2nd to and including the 15th. On the 13th the temperature was above freezing for sixteen consecutive hours and on the 12th it was alternately freezing and thawing from about 2:00 P. M. until midnight reaching 36° above at that hour. Conditions during the days immediately preceding the accident were thus ideal for water to fall from the pigeon board and freeze, forming ice at the entrance way upon which the plaintiff slipped on the late afternoon of January 15. Her statement that when she fell there was "plenty" of ice and snow at the entrance is not seriously disputed. There was testimony tending to prove, and it is also a matter of common knowledge, that water from the board would not necessarily drop straight down but would be influenced by wind or air currents. The board being located some twelve to fourteen feet above the sidewalk and directly over the entrance the opportunity for such action here is obvious. To this must be added the fact, also a matter of common knowledge, that as water falls and freezes, forming ice, succeeding drops tend to spatter and run, extending the frozen area.

Lastly, the jury saw the place under similar conditions to those existing at the time of the accident "which 'may have furnished a vital part of the evidence.' " *Tetreault* v. *Gould*, 83 N. H. 99, 102, and cases cited. It has been well said that "a look is worth a thousand words." On this view or previously, it is a fair assumption that the jury observed, among other things, that the general foot traffic did not pass within four or five inches of the face of the building (as this would involve walking sideways) or over the place at the entrance way where the plaintiff fell, but that ordinarily only the traffic entering the building passed over this area. They may have reasonably concluded that the snow and traffic at this point were probably insufficient, without the drip, to form an appreciable amount of ice, or to

put it another way that the drip rather than the traffic and natural snowfall made the ice where the plaintiff fell. The defendant admittedly knew that there was plenty of ice in front of the step and it should have taken little observation to discover from whence it came.

I recognize this as a close case upon which fair minded persons may differ, but I find myself unable to say, in the face of these facts, *that no reasonable man could find it a little more probable than otherwise* that the plaintiff slipped on ice formed by the drip from the pigeon board. This conclusion renders unnecessary any expression on whether the Court erred in withdrawing from the jury the issue of negligence in the maintenance of the step in connection with the icy sidewalk, and I would order judgment on the verdict.